### In re O'REILLY'S ESTATE.

### In re GAWNE.

(Supreme Court, Appellate Division, Second Department. April 24, 1903.)

1. WILLS—CONSTRUCTION—DEVISE IN TRUST.

A will gave testator's property to her executors in trust to pay the income thereof to her husband for life. A following clause directed that on his death "my surviving executor shall divide the principal sum of

my estate among my sons [naming them] * * * in manner following;
that is to say:" to her three unmarried sons "one equal one-fifth part"
each; "to my son W. one equal one-fifth part in trust for his wife S.;
to my son E. one equal one-fifth part in trust for his wife M." The per-
sonal property·law (Laws 1897, p. 507, c. 417, § 2) provides that the abso-
lute ownership of personal property shall not be suspended by any limita-
tion or condition for a longer period than during the continuance of two
lives in being, etc., and that "in other respects limitations of future or
contingent interests in personal property, are subject to the rules pre-
scribed in relation to future estates in real property." Section 73 of the
real property law (Laws 1896, p. 570, c. 547) declares that "every dis-
position of real property, whether by deed or by devise, shall be made
directly to the person in whom the right to the possession and profits is
intended to be vested, and not to another to the use of, or in trust for
such person; and if made to any person to the use of or in trust for
another, no estate or interest, legal or equitable, vests in the trustee."
*Held*, that E. took no estate under the will, and the one-fifth share be-
longed solely and· absolutely to M., his wife.

Appeal from Surrogate's Court, Kings County.

In the matter of the judicial settlement of the account of D. Mc-
Leod Gawne as sole surviving executor of Ellen O'Reilly, deceased.
From a decree construing the will of the deceased and settling the
accounts of the executor, Mary E. O'Reilly appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, WOOD-
WARD, HIRSCHBERG, and HOOKER, JJ.

Albert R. Moore, for appellant.
Henry A. Forster, for respondent Edward A. Reilly.

GOODRICH, P. J. This appeal requires the construction of the
third clause of the will of Ellen O'Reilly, deceased. By the second
clause she gave her estate, real and personal, to her executors, with
power to transfer or sell the same, in trust to keep the principal in-
vested during the life of her husband, and to pay him the income as
long as he should live. The third clause of the will reads as follows:

"Third. It is my will and I hereby direct that upon the death of my said
husband, James O'Reilly, my surviving executor shall divide the principal
sum of my estate among my sons, James T. Reilly, William F. Reilly, Ed-
ward A. Reilly, and my adopted sons William O'Reilly and Franklyn O'Reilly,
children of Franklyn Fletcher, and legally adopted by my husband and
myself in manner following; that is to say: to my son James T. Reilly one
equal one-fifth part; to my son William F. Reilly, one equal one-fifth part
in trust for his wife Sarah A. Reilly; to my son Edward A. Reilly, one equal
one-fifth part in trust for his wife Mary E. Reilly; to my adopted son William
O'Reilly one equal· one-fifth part and to my adopted son Franklyn O'Reilly
one equal one-fifth part."

The question to be determined is whether Edward or his wife,
Mary, was vested by the will with the one-fifth part of the estate on
the death of the testatrix's husband. The learned surrogate held that
the share was bequeathed to Edward, saying:

"The fact that in the third clause of the will the bequest to Edward
O'Reilly is followed by the words 'in trust for his wife Mary E. Reilly' is,
in my judgment, not sufficient to destroy such bequest, or to impress it with
a trust. In order to constitute a trust, it is not sufficient to name a bene-
ficiary. The object, terms, and conditions must also be stated."

It is necessary first to ascertain the intention of the testatrix, derivable within the four corners of the will. There is no other evidence of the circumstances or situation of the parties. So far as we can gather from the language of the will, the testatrix had five sons, two of whom, William and Edward, were married. The executor was directed, upon the death of the husband of the testatrix, to "divide the principal sum of my estate among my sons [naming them] * * * in manner following; that is to say:" to the three unmarried sons "one equal one-fifth part" each; "to my son William F. Reilly, one equal one-fifth part in trust for his wife Sarah A. Reilly; to my son Edward A. Reilly, one equal one-fifth part in trust for his wife Mary E. Reilly."

It is contended by the respondent that, where an absolute estate is given in one part of a will in clear and decisive terms, it cannot be taken away or cut down by subsequent words which are not as clear and decisive as the words creating the estate. But there are no words creating an absolute bequest of the one-fifth part to Edward, for the language of the will is to divide the estate among the sons "in manner following," and that manner is stated, as to Edward, to be in trust for his wife, utterly unlike the bequest to each of the three unmarried sons. Evidently the testatrix intended to, and did, make a difference in the destination of the one-fifth parts. Three of them she bequeathed directly, one to each of the three unmarried sons, while she bequeathed the other two shares, one to each of the married sons in trust for his wife. The reason for such change in the phraseology does not appear, save as it may be inferred from the fact that two were married, and the other three were single. This is not sufficient to lead us to force a construction of exact equality in the method of devolution among the children, and, as we may not make a new will for the testatrix, we must resort to the statutes and to authoritative construction placed upon such a will.

The personal property law (chapter 417, p. 507, Laws 1897, § 2) provides that the absolute ownership of personal property shall not be suspended by any limitation or condition for a longer period than during the continuance of two lives in being, etc., and that "in other respects limitations of future or contingent interests in personal property, are subject to the rules prescribed in relation to future estates in real property." Section 73 of the real property law (chapter 547, p. 570, Laws 1896), which is identical with section 49 of the Revised Statutes of 1829 and 1836 (volume 1, marg. p. 728, pt. 2, c. 1, tit. 2), reads in part:

"Every disposition of real property, whether by deed or by devise, shall be made directly to the person in whom the right to the possession and profits is intended to be vested, and not to another to the use of, or in trust for, such person; and if made to any person to the use of, or in trust for another, no estate or interest, legal or equitable, vests in the trustee."

In the introduction of Chaplin on Express Trusts & Powers (page 5), the author quotes the report of the statute revisers in relation to trusts, in which it is said:

"There are three classes of trusts, each requiring to be noticed: (1) Where the trustee has only a naked and formal title, and the whole beneficial in-

terest or right in equity to the possession and profits is vested in those for whose benefit the trust is created. * * * As to the first class, or formal trusts, it is plainly needless to retain them. They separate the legal and equitable estate for no purpose that the law ought to sanction. * * * Formal trusts we therefore propose to abolish by converting those which now exist into legal estates, and prohibiting their creation in future."

In the case at bar the will contained a limitation of a future interest in personal property to Edward in trust for his wife, upon and after the expiration of the trust to pay the income to the husband of the testatrix; and this, by the personal property law, is subject to the rules prescribed as to future estates by the real property law.

In Perry on Trusts (5th Ed., vol. 1, § 18) it is said:

"Trusts are divided into simple and special trusts. A simple trust is a simple conveyance of property to one upon trust for another, without further specifications or directions. In such case the law regulates the trust, and the cestui que trust has the right of possession and of disposing of the property, and he may call upon the trustee to execute such conveyances of the legal estate as are necessary."

In Rawson v. Lampman, 5 N. Y. 456, decided in 1851, and before the passage of the real property law, it was held that under sections 47 and 49 of the Revised Statutes of 1829 (volume 1, pp. 727, 728, pt. 2, c. 1, tit. 2), "Of Uses and Trusts," which correspond to sections 72 and 73, respectively, of the real property law, where a conveyance of lands is made to one person in trust for the use and benefit of another, his heirs and assigns, without limitation, no interest vests in the trustee, but the entire estate, legal and equitable, vests in the person to whose use the conveyance is made. That case was cited in Fisher v. Hall, 41 N. Y. 416, in connection with a will which gave to the testator's son "George, in trust and for the use of his children and their heirs, * * * reserving the income of the above property for the benefit of my son George, and his children, during his natural life." The court held:

"The testator attempted to create a mere passive trust, which the laws of this state did not at that time allow to be done. The property therefore became vested, under the statute, in the son of the testator and his children, as tenants in common."

Judge Lawrence, in a very careful and instructive opinion at Special Term, in Moorehouse v. Hutchinson, 2 N. Y. Supp. 215, reviewed the authorities, and construed a will, the seventh paragraph of which gave all the property of the testator to his wife, and directed that after her death it should be equally divided among his five children, with the words, "the interest of my two daughters devised to them under this will, to Alcander Hutchinson, in trust, for their sole and separate use." He said (page 216):

"The grantee, Alcander Hutchinson, has no power to do anything. He is not to receive the rents, issues, or profits of the share intended for Mrs. Moorehouse, nor of that of her sister. He is not to apply them to their use or maintenance. I cannot but conclude, therefore, that the alleged trust created in the seventh clause of the will is a mere passive trust, and therefore void."

This case, so far as I can ascertain, has never been questioned.

A fair test of the question whether or not there is a trust in the case at bar is whether there is any trust which can be enforced. Counsel for the respondent says in his brief: "In order to constitute a trust, it is not sufficient to name a beneficiary. The object, terms and conditions of the alleged trust must also be stated," and he cites Dillaye v. Greenough, 45 N. Y. 438, and Steere v. Steere, 5 Johns. Ch. 1, 9 Am. Dec. 256, which held in similar cases that no trust was constituted which the court could enforce. Counsel for the appellant contends that, at most, the will created a passive trust, which is no trust at all. Upon the argument it was conceded by both counsel that there was no trust, the question being only whether the one-fifth part belonged to the husband or the wife. It is true that it was held in Holmes v. Mead, 52 N. Y. 332, and Matter of Carpenter, 131 N. Y. 86, 29 N. E. 1005, that trusts of personal property are not affected by the statute of uses and trusts, which applies only to trusts in real property. But this does not affect the provisions of the personal property law. Besides, in Cutting v. Cutting, 86 N. Y. 522, which held that the article, "Of Powers," in the Revised Statutes, is applicable as well to powers concerning personalty as to those affecting real estate, it was said by Judge Folger (pages 546, 547):

"There is certainly much force in the position that one body of law should not declare a different rule for two kinds of property, when there is nothing in the nature of either kind of property, or in the nature and effect of the rule, that calls for it. Clearly, in the nature of things, there is no reason why a gift or bequest of personal property, with a power of disposition, should not be measured by the same rule as a grant or devise of real estate with the same power. Nor is there cited or suggested any express provision of statute law that stands in the way of the application of the rule of the Revised Statutes to both kinds of property. As, then, it is the duty of courts of justice to endeavor to preserve an analogy between estates and interests in land, and the income thereof, and similar interests in personal property, the judgment of this court is that the personal estate bequeathed by Mrs. Cutting, as above stated, is, alike with the real estate devised by her, out of the reach of the plaintiff as a judgment creditor of Fulton Cutting."

Following the statutes and the authorities which have been cited, we reach the conclusion that it was the intention of the testatrix to make, and that she did make, a distinction between the shares bequeathed to the unmarried sons and those bequeathed to the married sons, in trust for their wives; that only a passive or formal trust can be spelled out of the will; that there are no clear and decisive words which create an absolute estate in Edward to the one-fifth share, and that there is no cutting down of any estate bequeathed to him; that Edward did not take any estate; and that the one-fifth share belongs solely and absolutely to Mary E. Reilly, his wife.

The decree of the surrogate should be reversed, with costs. All concur; HIRSCHBERG, J., in result.